Majority: SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, and HUMPHREY, JJ.
Dissent: JABAR, J;
SAUFLEY, C.J.
[¶ 1] The Department of Health and Human Services appeals from a summary judgment entered by the Superior Court (Kennebec County, Murphy, J.) declaring that the District Court — not the Department — has' exclusive original jurisdiction over the décision to terminate physician Steven Doane’s participation in, and reimbursement from, MaineCare and any other medical assistance programs in' Maine.[1] The Department' argues that the court erred in concluding that a provider’s participation in MaineCare constitutes a “license,” the revocation of which invokes District Court jurisdiction. See 4 M.R.S. § 152(9) (2016); 5 M.R.S. §§ 8002(5), 10051(1) (2016). We agree that jurisdiction did not lie in the District Court, and we vacate the court’s judgment,
I. BACKGROUND
[¶ 2] The following undisputed facts are drawn from the record of the proceedings in the Superior Court and the undisputed statements of material facts presented on Doane’s motion for summary judgment. See Grant v. Foster Wheeler, LLC, 2016 ME 85, ¶ 2, 140 A.3d 1242. Stephen Doane is a physician licensed to practice in Maine by the Board of Licensure in Medicine. That Board censured Doane in March 2015 for (lj being" insufficiently aware of the hazards associated with the opiate medications he was prescribing to a patient who ultimately died of accidental oxycodone and cyclobenzaprine intoxication, (2) failing to follow up on information from other doctors about that patient, and (3) violating a Board rule regarding the use of controlled substances for pain treatment. The Board found that Doane had not created a written treatment plan, discussed *272 with the patient the risks and benefits of using controlled substances, implemented a written agreement outlining patient responsibilities, or kept accurate and complete medical records. The Board renewed his license, but it imposed terms of probation and required him to pay $12,000 to the Board for the costs of investigation and enforcement.
[¶ 3] In a letter dated April 9, 2015, the Department of Health and Human Services informed Doane that it had decided to terminate his participation in, or reimbursement from, the MaineCare program. The Department stated that it took its action pursuant to the MaineCare Benefits Manual, 14 C.M.R. 10 144 101-1-9, - 26 to -28, §§ 1.03-6, 1.19-1 to -3 (2014),[2] and the authority granted by the federal government through 42 C.F.R. part 1002 (2016). Specifically, the Department indicated that the sanction was being imposed because Doane had violated the “regulations or code of ethics governing the conduct of occupations or professions or regulated industries,” had failed to “meet standards required for State or Federal law for participation (e.g. licensure or certification requirements),” and had received a “[fjormal reprimand or censure [from] an association of the provider’s peers for unethical practices.” 14 C.M.R. 10 144 101-1-26 to -27, § 1.19-KM), (O), (R).
[¶ 4] The letter informed Doane that he could request informal review of the determination within sixty days after receiving the letter and that if he disagreed with the result of that review, he could request an administrative hearing within sixty days after receiving the informal review decision. See 14 C.M.R. 10 144 101-1-33 to -34, § 1.21 (2013); see also 5 M.R.S. §§ 8001-11008 (2016). Doane requested informal review. The Department, after informal review, affirmed the initial decision terminating Doane’s participation in MaineCare and informed Doane, by letter dated September 11, 2015, of his right to request an administrative hearing within sixty days.
[¶ 5] On September 23, 2015, Doane filed a complaint in the Superior Court seeking a declaratory judgment that the Department’s decision terminating his participation in, and reimbursement by, the MaineCare program constituted a license revocation — a decision over which the District Court has exclusive original jurisdiction. See 4 M.R.S. § 152(9); 5 M.R.S. §§ 8002(5), 10051(1); M.R. Civ. P. 80G. He sought an order enjoining the progress of the administrative proceeding to terminate his participation in the programs. Doane also filed a request for an administrative hearing with the Department on November 5, 2015, but he later filed a motion in the Superior Court declaratory judgment proceeding seeking a preliminary injunction enjoining the Department from utilizing the administrative proceeding to revoke that alleged license.
[¶ 6] The Department moved to dismiss Doane’s declaratory judgment complaint on the ground that no license had been revoked but rather the Department had determined not to contract with Doane. It referred to and attached Doane’s employer’s provider agreement with the Department that was in effect at the time of the events that led to Doane’s discipline by the Board of Licensure in Medicine. The Department also attached a copy of the decision of the Board of Licensure in Medicine allowing Doane to continue practicing medicine in Maine.
[¶7] Doane opposed the motion to dismiss and moved for summary judgment, submitting a statement of material facts *273 with supporting evidence. The Department filed a responsive statement of material facts admitting the pertinent facts and additionally referring to the informal review decision.
[¶ 8] The court entered a judgment on July 1, 2016, in which it denied the Department’s motion to dismiss and granted Doane’s motion for summary judgment, essentially providing the declaratory relief sought by Doane. The court concluded that the ability to provide and be reimbursed for MaineCare patient treatment, constituted a form of permission that fell within the statutory definition of a “license” provided in 4 M.R.S. § 162(9) and 5 M.R.S. § 8002(5), and therefore that the District Court had exclusive jurisdiction to adjudicate the Department’s proposed termination of Doane’s participation in the MaineCare program,
[¶ 9] The Department timely appealed from the judgment. See 14 M.R.S. §§ 1851, 5959 (2016); M.R. App. P. 2. Upon inquiry from the court, Doane filed a letter indicating that he did not intend to pursue the motion for preliminary injunction at that time. ,
II. DISCUSSION
[¶10] At the outset, we agree with the Superior Court that it had the authority to rule on the legal dispute raised here. “When a party seeks relief that is beyond the jurisdiction of the administrative agency ... and when it would be futile for the plaintiffs to complete the administrative appeal processf,] the party need not exhaust its administrative remedies before seeking judicial relief.” Houlton Band of Maliseet Indians v. Boyce, 1997 ME 4, ¶ 11, 688 A.2d 908 (alterations in original) (quotation marks omitted). Moreover, a jurisdictional issue such as that raised here “may be raised at any time in a proceeding.” Ford Motor Co. v. Darling’s (Darling’s I), 2014 ME 7, ¶ 41, 86 A.3d 35. Accordingly, we review the court’s summary judgment.
A. Summary Judgment and the Standard > of Review ■ ■
[¶ 11] Summary judgment “shall be rendered forthwith” if the supported statements of material facts “show that there is no genuine issue as to any material fact set forth in those statements' and that any party is entitled to a judgment as a matter of law.” M.R. Civ. P. 56(c). The relevant facts are not in dispute, and we review the summary judgment de novo for errors of law. Harlor v. Amica Mut. Ins. Co., 2016 ME 161, ¶ 7, 150 A.3d 793.
[¶ 12] We also review de novo whether a trial court has subject matter jurisdiction. Midland Funding LLC v. Walton, 2017 ME 24, ¶ 12, 155 A.3d 864. Generally, coupt jurisdiction is “strictly a function of statute.” Norris Family Assocs., LLC v. Town of Phippsburg, 2005 ME 102, ¶ 21, 879 A.2d 1007. Statutory interpretation is also reviewed de novo. Carignan v. Dumas, 2017 ME 15, ¶ 14, 154 A.3d 629.
[IT 13] In interpreting statutes, our primary objective is “to discern and give effect' to the Legislature’s intent.” Ford Motor Co. v. Darling’s (Darling’s II), 2016 ME 171, ¶ 24, 151 A.3d 507 (quotation marks omitted). “To' determine that intent, we first look to the statute’s plain meaning and the entire statutory scheme of which the ’provision at issue forms a part.” Id. (quotation marks omitted). We determine the plain meaning of, a statute “by taking into account the subject matter and purposes of the statute, and the consequences of a particular interpretation.” Id. (quotation marks, omitted). We will reject statutory interpretations “that are inimical to the public interest or that produce ab *274 surd or illogical results.” Id. (quotation marks omitted). Only if the meaning of a statute is ambiguous after applying these principles will we consider extrinsic information such as legislative history.- Id. If a regulation conflicts with an existing statute, the statute controls. See Larson v. New England Tel. & Tel. Co., 141 Me. 326, 334, 44 A.2d 1 (1945).
B. Jurisdiction Over Licensing Decisions
[¶ 14] The District Court has. exclusive jurisdiction, upon complaint of an agency or the Attorney Generalato revoke or suspend certain licenses. See 4 M.R.S. § 152(9); 5 M.R.S. §§ 8002(5), 10051(1). In the title of the Maine Revised Statutes establishing the courts and their jurisdiction, the Legislature has conferred on the District Court jurisdiction over the following:
Licensing jurisdiction. Except as provided in Title 5, section 10004; Title 8, section 279-B; Title 10, section 8003; Title 20-A, sections 10712 and 10713; Title 29-A;' Title 32, chapters 2-B, 114 and 135; and Title 35-A, section 3132, exclusive jurisdiction upon complaint 'of an agency or, if the licensing agency fails or refuses to act within a reasonable time, upon complaint of the Attorney General to revoke or suspend licenses issued by the agency. The District Court has original jurisdiction upon complaint of a licensing agency to determine whether renewal or reissuance of a license of that agency may be refused. The District Court has original concurrent jurisdiction to grant equitable relief in proceedings initiated by an agency or the Department of the Attorney General alleging any violation of a license or licensing laws or rules.
Notwithstanding any other provisions of law, a licensing agency may not reinstate or otherwise affect a license suspended, revoked or modified by the District Court pursuant to a complaint filed by the Attorney General without the approval of the Attorney General.
4 M.R.S. § 152(9) (emphasis added); see also M.R. Civ. P. 80G. The District Court’s jurisdiction with respect to license revocation or suspension is also set forth in the Maine Administrative Procedure Act:
Jurisdiction. Except as provided in section 10004; Title 8, section 279-B; Title 10, section 8003; Title 20-A, sections 10712 and 10713; Title 29-A; and Title 32, chapters 2-B, 114 and 135, the District Court has exclusive jurisdiction upon complaint of any agency or, if the licensing agency fails or refuses to act within a reasonable time, upon complaint of the Attorney General- to revoke or suspend licenses issued by the■ agency and has original jurisdiction upon complaint of an agency to determine whether renewal or reissuance of a license of that agency may be refused.
5 M.R.S. § 10051(1) (emphasis added).[3]
[¶ 15] Separately, a physician’s authority to practice medicine in Maine is provided through the issuance of a license from the Board of Licensure in Medicine. See 32 M.R.S. § 3274 (2016). Pursuant to 4 M.R.S. § 152(9) and 5 M.R.S. § 10051(1), license revocation proceedings by the Board of Licensure in Medicine are not subject to the District Court’s exclusive jurisdiction over license revocations and suspensions because the proceedings fall within “[t]itle 10, section 8003.” See 10 M.R.S. §§ 8001~A(4), 8003(5) (2016); see also 32 M.R.S. §§ 3269(4), 3282-A (2016).
*275 [¶ 16] It is unclear whether the Board now has exclusive jurisdiction over the revocation or suspension of a medical license or whether that jurisdiction is concurrent with the, District Court. As set forth in 10 M.R.S. § 8003(5), the “jurisdiction to suspend and revoke occupational and professional licenses conferred by this subsection is concurrent with that of the District Court.” We recently noted, however, without discussing this provision of title 10, that the Legislature’s amendment of the Board of Licensure in Medicine’s authorizing statute in title 32 to omit the option of filing a complaint with the District Court[4] left the Board with “only one path” to revoke a license. Zablotny v. State Bd. of Nursing, 2014 ME 46, ¶ 14 n.2, 89 A.3d 143. Because the dispute here focuses not on Doane’s medical license but on his capacity to participate in and receive compensation from Maine’s Medicaid program, MaineCare, we need not resolve any jurisdictional question related to the revocation of medical licenses.
[¶ 17] The issue now before us is whether, as a matter of law, the' capacity to participate in MaineCare as a provider who may receive compensation is also a “license,” the revocation of which the Legislature intended to place within the jurisdiction of the District Court.
[¶ 18] The Administrative Procedure Act defines a “license” as follows: “‘License’ includes the whole or any part of any agency permit, certificate, approval, registration, charter or similar form of permission required by law which represents an exercise of the state’s regulatory or police powers.” 5 M.R.S. § 8002(5). This definition is the source of the parties’ dispute over whether the District Court or the Department has original jurisdiction over the decision whether -a provider may continue to participate in and be reimbursed by Maine’s Medicaid program — Maine-Care.
[¶ 19] An understanding of the federal Medicaid program is important to resolve the question presented here. Medicaid is a primarily federally funded program; See 42 U.S.C.S. § 1396-1 (LEXIS through Pub. L. No. 115-45). The federal government appropriates money to Maine to pay for medical, ■ rehabilitation, and other assistance “on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income resources are insufficient to meet the costs of necessary-medical services.” Id. The applicable federal regulations require gubernatorial and federal review and approval" of the state plan. 42 C.P.R. §§ 430.10-430.16 (2016).
[IT 20] Maine’s Department of Health and Human Services administers the Medr icaid program in Maine. See 22 M.R.S. § 3173 (2016); see also 24-A M.R.S. § 6911 (2016). Tq . perform its functions, the Department is authorized and required to issue rules and regulations to administer Maine’s Medicaid program, known as MaineCare. See 22 M.R.S. § 3173.
[¶ 21] The Department has adopted Medicaid rules in the form of the Maine-Care Benefits Manual. See generally 14 C.M.R. 10 144 101, ch. 101 (2016). Neither federal Medicaid nor state MaineCare regulations call for the issuance of a “license” to a physician to receive Medicaid funds for the provision of medical services. The Manual does, however, require a provider seeking to provide services to MaineCare members to complete an enrollment form and enter into a Medicaid provider agreement. 14 C.M.R. 10 144 101-1-2 to -4, *276 §§ 1.02-4(H), 1.03-KA) (2014). The agreement is conditioned on compliance with the requirements for provider participation outlined in the Manual. See generally 14 C.M.R. 10 144 101, ch. 101.
[¶ 22] Some providers, pursuant to the federal Medicaid regulations, must or may be excluded from the Medicaid program by the federal Office of Inspector General. See 42 C.F.R. §§ 1001.101, 1001.201-1001.951 (2016). The Inspector General’s office must exclude from participating in the Medicaid program providers who have been convicted of certain types of crimes, see id. § 1001.101, and may exclude from participation providers who have committed other misconduct, including providers who have had their state professional licenses revoked or suspended, see id. §§ 1001.201-1001.951. The federal regulations are not to be “construed to limit a State’s own authority to exclude an individual or entity’ from Medicaid for any reason or period authorized by State law.” 42 C.F.R. § 1002.2(b) (2016) (redesignated as 42 C.F.R. § 1002.3(b) by 82 Fed. Reg. 4100 § 36 (Jan. 12, 2017)).
[¶ 23] In exercising Maine’s authority to exclude individuals or entities from participating in the MaineCare program, the Department may impose sanctions on a provider for “[violation of any ... regulations or code of ethics governing the conduct of occupations or professions or regulated industries; ... [fjailure to meet standards required by State or Federal law for participation (e.g. licensure or certification requirements); [or] ... [f]ormal reprimand or censure by an association of the provider’s peers for unethical practices.” 14 C.M.R. 10 144 101-1-26 to -27, § 1.19-1(M), (O), (R).[5] If a provider’s participation in the program is suspended or terminated as ,a sanction, the provider is precluded “from submitting claims for payment, either personally or through claims submitted by any clinic, group, corporation or other association.” Id. § 1.19-3(B)(2).
[¶ 24] The State’s regulations explicitly vest in the Commissioner of the Department of Health and Human Services the responsibility to decide whether to impose sanctions within the MaineCare program and thus whether to continue a physician’s or a facility’s participation in the program as set forth in the provider agreement. See 14 C.M.R. 10 144 101-1-28, § 1.19-3(A). The Commissioner “may delegate sanction responsibilities to the Division of Audit, and the Director of MaineCare Services.” Id.
[¶ 25] When the Department decides to limit, terminate, or otherwise sanction a physician who is participating as a Maine-Care provider pursuant to a provider agreement with the State of Maine, the Manual authorizes a provider to pursue informal review by writing to the Director of MaineCare Services within sixty days, after which, if dissatisfied, the provider may request an administrative hearing, with the Commissioner having final decision-making authority, or may elect to participate in binding arbitration. 14 C.M.R. 10 144 101-1-33 to -34, § 1.21-1(A), (B) (2013). If the provider is dissatisfied with the final decision after an administrative hearing, “an appeal may be taken to the Superior Court pursuant to the Administrative Procedure Act.” 14 C.M.R. 10 144 101-1-33, § 1.21-KA); see 5 M.R.S. § 11002 (2016); M.R. Civ. P. 80C.
[¶ 26] The question before us is whether the Manual’s administrative review process for the imposition of sanctions, through *277 which a provider may appeal the Department’s administrative decision to the Superior Court, applies to the termination of a physician from the MaineCare program, or whether, by statute, the Legislature has provided that termination is the revocation of a “license,” bringing the decision within the exclusive, or even concurrent, jurisdiction of the District Court. See 10 M.R.S. § 8003(5)(A-1)(2-A). To answer that question, we look to the meaning of the statutes in the context of the entire statutory scheme. See 4 M.R.S. § 152(9); 5 M.R.S. §§ 8002(5), 10051(1); Darling’s II, 2016 ME 171, ¶ 24, 151 A.3d 507.
[¶ 27] Sections 152(9) and 10051(1) do not specifically mention the Medicaid or MaineCare program, and they do not list or describe the license revocations and suspensions that fall within the District Court’s jurisdiction. The statutes do, however, explicitly list, by statutory citation, license determinations that are excepted from that jurisdiction. See 4 M.R.S. § 152(9); 5 M.R.S. § 10051(1). Examining the nature of the license revocations or suspensions excepted from the District Court’s jurisdiction gives a strong indication of what, if not excepted, constitutes the revocation or suspension of a professional or occupational “license.”
[¶ 28] The excepted occupational licensing decisions are as follows:
• Suspension of a harness racing license, 8 M.R.S. § 279-B (2016);
• Suspension or revocation of a “license, certification, registration, permit, approval or other similar document evidencing admission to or granting authority to engage in a profession, occupation, business or industry,” 10 M.R.S. § 8003(3), (5)(A-1)(2) (2016);[6]
• Suspension or revocation of an emergency medical services person’s “license,” 32 M.R.S. § 90-A (2016); and
• Suspension or revocation of a license pursuant to the Maine Uniform Securities Act, title 32, chapter 135.
Each occupational license revocation or suspension listed operates as a complete revocation or suspension of the authorization to engáge in a profession or occupation. None of these suspensions or revocations is analogous to a termination of participation in a federally funded program through a provider agreement. Moreover, in the face of explicit regulatory authority providing for the Department to act as the decision-maker, subr ject to appellate review in the Superior Court, the Legislature has not enacted any legislation to explicitly remove the Department’s authority and require initial decision-making in the District Court.
[¶ 29] From the language of the statutes, viewed in context of the entire statutory scheme, see Darling’s II, 2016 ME 171, ¶ 24, 151 A.3d 507, including the recent changes in statutes regarding the adjudicatory authority of the Board of Li-censure in Medicine,[7] and considering the functional distinctions between a license revocation and k termination of participation in a program through a provider agreement, we conclude that the entity that provides a physician with the “approval ... required by law [that] represents an exercise of the state’s regulatory or police powers,” 5 M.R.S. § 8002(5), to practice medicine is the Board of Licensure in *278 Medicine. See 5 M.R.S. § 12004-A(24) (2016); 32 M.R.S. § 3270 (2016). The Board — not the Department of Health and Human Services — is responsible for initiating any effort to. revoke or suspend a physician’s license for violating professional standards. See 6 M.R.S. §§ 10001-10005; 32 M.R.S. §§ 3269(4), 3282-A; see also 4 M.R.S. § 152(9); 5 M.R.S. § 10051(1); IQ M.R.S. §§ 8001-A(4), 8003(5).,. It is through the professional licensing of physicians — not through the State’s implementation of MaineCare as part of the federal Medicaid program— that the State exercises its police power on behalf of all Maine citizens to “ ‘preserv[e] ... the health, safety and comfort of [its] citizens’” from unqualified, incompetent, or unethical physicians. State v. Pelletier, 2015 ME 129, ¶ 7, 125 A.3d 354 (quoting Hendrick v. Maryland, 235 U.S. 610, 622, 35 S.Ct. 140, 59 L.Ed. 385 (1915)).
[¶ 30] To the extent .that the Department’s decision, regarding Doane affects the health or safety of Maine’s citizens, it does so only with respect to those Maine citizens who receive services through the Department’s MaineCare program. The Department’s other purpose — to make the best' use of State funds received from the federal government — may redound to the fiscal benefit of all citizens, but it is not the exercise of the police power to license and regulate the medical profession.
[¶ 31] To avoid an interpretation of the statutes that is “inimical to the public interest or. that produced] absurd or illogical results,” Darling’s II, 2016 ME 171, ¶ 24, 151 A.3d 507 (quotation marks omitted), we construe sections 152(9) and 10051(1) not to confer on.the District Court jurisdiction over the imposition of a sanction on a MaineCare' provider by the Department of Health and Human Services. Therefore, contrary to the determination of the Superior Court, the Department’s- decision to terminate Doane’s participation in the MaineCare program does not fall within the licensing decisions over which the Legislature gave the District Court original and exclusive jurisdiction. See 4 M.R.S. § 152(9); 5 M.R.S. § 10051(1).[8]
[¶ 32] We vacate the judgment entered in favor of Doane and remand the matter for the Superior Court to enter a declaratory judgment that jurisdiction over the termination of Doane’s participation as a provider in the MaineCare program is as set out in the MaineCare Benefits Manual.
The entry is:
Judgment vacated. Remanded for the entry of summary judgment for the Department of Health and Human Services.

. Because the basis for the termination was grounded in state and federal Medicaid and MaineCare regulations, and no other programs have been identified by the parties on appeal,- we do not discuss further any other medical assistance programs.

. Rule 1.19 has since been recodified as Rule 1.20. See Dep’t of Health & Human Servs. Adopted Rule No. 2017-105 (effective July 5, 2017).

. The Board of Licensure in Medicine — established by 5 M.R.S. § 12004-A(24) (2016) and 32 M.R.S. § 3263 (2016) (codified within chapter 48 of title 32) — is not excepted from District Court jurisdiction for license revocation or suspension.

. See P.L. 2013, ch. 355, §§ 8-12 (effective Oct. 9, 2013) (codified at 32 M.R.S. § 3282-A (2016)),

. The Manual also authorizes the Department to "terminate a provider's participation ... without cause,” though neither party contends that this is what happened here. See 14 C.M.R. 10 144 101-1-8, § 1.03-4(A) (2014).

. Registrations, permits, approvals, or other documents "evidencing the grant of authority to engage in the business of banking” are governed by title 9-B, which the Legislature acknowledged as separate from the regulation of professions, occupations, businesses, or industries in 10 M.R.S. § 8003(3) (2016).

. See P.L. 2013, ch. 355, §§ 8-12.

. From this record, we cannot determine whether additional process is available to Doane, who requested an administrative hearing in November 2015 but appears to have declined to prosecute his request to enjoin the Department from taking further action on his administrative challenge. See 14'C.M.R. 10 -144'101-1-33, § 1.21 — 1(A) (2013).