MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2018 ME 120
Docket:       PUC-17-185
Argued:       December 13, 2017
Decided:      August 16, 2018

Panel:        SAUFLEY, C.J., and MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

CONSERVATION LAW FOUNDATION et al.

v.

PUBLIC UTILITIES COMMISSION

SAUFLEY, C.J.

[¶1]     The Conservation Law Foundation; the Industrial Energy Consumers' Group; ReVision Energy, LLC; and the Natural Resources Council of Maine appeal from the promulgation of a final rule by the Public Utilities Commission.[1]  CLF argues that the Commission violated several provisions of the Maine Administrative Procedure Act, *see* 5 M.R.S. § 8058 (2017), and that the rule violates statutory bans on exit fees, *see* 35-A M.R.S. § 3209(3) (2017), and unjust discrimination, *see* 35-A M.R.S. § 702(1) (2017)*.*  The Commission has moved for dismissal of the appeal, arguing that original jurisdiction over challenges to the Commission's promulgation of a rule lies exclusively with the

---

[1] All four appellants join the same brief and argue the same issues in this appeal.  We refer to them collectively as CLF.

Superior Court. Because we do not have original jurisdiction over appeals from administrative rulemaking proceedings, we dismiss the appeal.

## I. BACKGROUND

[¶2] Net Energy Billing (NEB) is a renewable energy incentive program that is intended to encourage electricity generation from renewable resources. 9 C.M.R. 65 407 313-3 § 1 (2017). The Commission first implemented NEB in the early 1980s by promulgating a rule permitting small power generators to sell back to their utility any electricity that they generated but did not consume on site. *See Re Cogeneration and Small Power Prod.*, 42 P.U.R.4th 536 (Me. 1981). Following the industry deregulation in the late 1990s, the Commission implemented a credit-based incentive whereby NEB customers who generated more electricity than they used in a given billing period were provided credits to offset usage over the following twelve months. *See* Me. Pub. Util. Comm'n, *Report on Net Energy Billing* 5-6 (Jan. 15, 2009).

[¶3] In 2016, following a review of the NEB program, the Commission issued a notice of proposed rulemaking. *See* 5 M.R.S. § 8053 (2017). After holding a public hearing and receiving written comments on the proposed amendments, the Commission adopted an amended rule on March 1, 2017. *See* 5 M.R.S. § 8052(1)-(3) (2017).

[¶4]   Pertinent to this appeal, the Rule implemented three changes, all applicable to the calculation of the NEB incentive with respect to the transmission and distribution (T&D) portion of the NEB customers' bills, and all to be implemented over an extensive period of time.  First, the Rule created an attenuated reduction in the credit available to new NEB customers, reducing the credit by ten percent for each of the next ten years, applied according to the year in which the customer enrolls in the NEB program.  9 C.M.R. 65 407 313-2 § 3(F) (2017).  Thus, for ratepayers who join the NEB program after 2027, zero percent of excess energy will be available as a credit against T&D charges.  *Id.*  Second, the Rule grandfathered existing customers so that their NEB incentive applicable to T&D charges remains the same for fifteen years, after which it is eliminated altogether.  *Id.* § 3(E).  Third, the Rule defined "nettable energy"— that portion of the customer's consumption from which the incentive is to be calculated—so that all of the energy consumed by the customer is included.[2] *Id.* § 2(L).

[¶5]   On March 21, 2017, CLF filed a petition for reconsideration.  The Commission did not respond to the petition, rendering it denied.  *See* 9 C.M.R.

---

[2] The parties agree that the result of this definitional change is that, as the incentive is eliminated, NEB customers will be issued a T&D charge reflecting all of the electricity they generate, including electricity they generate and consume "behind the meter."

4

65-407 110-12 § 11(D) (2017).  CLF filed a timely appeal on May 1, 2017.  *See*

M.R. App. P. 2(b)(3) (Tower 2016).[3]  In its notice of appeal, CLF asserted:

- that the Rule constitutes an "exit fee" in violation of 35-A M.R.S. § 3209(3);

- that the Rule unjustly discriminates against NEB customers in violation of 35-A M.R.S. § 702(1);

- that the Commission exceeded its authority to adopt and amend rules governing NEB, *see* 35-A M.R.S. § 3209-A (Supp. 2017);

- that the Commission's notice of proposed rulemaking failed to notify the public of the proposed definitional change to "nettable energy," *see* 5 M.R.S. § 8052(1), (5)(B) (2017);

- that the Commission's rulemaking was procedurally flawed because the Commission failed to include either a small business impact statement, *see* 5 M.R.S. § 8052(5-A) (2017), or a fiscal impact statement, *see* 5 M.R.S. § 8057-A(1)(C) (2017); and

- that the Commission's finding that the NEB program results in a "cost shift" to non-NEB ratepayers is not supported by substantial evidence in the record.

[¶6]  The Commission filed a motion to dismiss the appeal, *see* M.R. App. P. 4(d), arguing that jurisdiction over appeals from Commission rules lies exclusively with the Superior Court.  We issued an order requesting that the

---

[3]  The Maine Rules of Appellate Procedure were restyled effective for appeals commenced on or after September 1, 2017.  *See* M.R. App. P. 1.  Because CLF filed this appeal before September 1, 2017, the restyled Maine Rules of Appellate Procedure do not apply.

parties address the jurisdictional issue in their briefs. We now determine that the jurisdictional deficiency is dispositive.

## II. ANALYSIS

[¶7] The Commission argues that 35-A M.R.S. § 1320 (2017) does not authorize appeals to the Law Court when the Commission acts pursuant to its rulemaking authority. "Whether subject matter jurisdiction exists is a question of law that we review de novo." *Tomer v. Me. Human Rights Comm'n.*, 2008 ME 190, ¶ 9, 962 A.2d 335. In doing so, we examine the plain meaning of the statute at issue and consider "the entire statutory scheme" in order to "discern and give effect to the Legislature's intent." *Doane v. Dep't of Health & Human Servs.*, 2017 ME 193, ¶ 13, 170 A.3d 269 (quotation marks omitted). We avoid interpretations that create "absurd, illogical, unreasonable, inconsistent, or anomalous results if an alternative interpretation avoids such results." *Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 21, 107 A.3d 621.

[¶8] Here, CLF asserts that its appeal is authorized by 35-A M.R.S. § 1320(1), which provides in pertinent part:

> The following procedures apply to an appeal of a decision of the commission.

> **1. Final decisions.** An appeal from a *final decision* of the commission may be taken to the Law Court on questions of law in

> the same manner as an appeal taken from a judgment of the Superior Court in a civil action.

(Emphasis added.) CLF contends that section 1320(1) authorizes its appeal to the Law Court because the Commission issued a "final decision" and CLF has raised "questions of law." *Id.* CLF's argument turns, in the first place, on the proper interpretation of the phrase "final decision" in section 1320(1)—a phrase that we have not interpreted before in this context.[4]

[¶9] Because "final decision" is not defined anywhere in title 5, we examine the statutory scheme within which the phrase is used, beginning with section 1320(1). *See Doane*, 2017 ME 193, ¶ 13, 170 A.3d 269. This subsection requires that appeals taken from the Commission shall be taken "in the same manner as an appeal taken from a judgment of the Superior Court in a civil action." 35-A M.R.S. § 1320(1). By equating the role of the Commission in making "final decisions" with the Superior Court, section 1320(1) evinces a legislative intent to define appellate review over decisions of the Commission

---

[4] CLF contends that we must have interpreted this phrase when we exercised jurisdiction over an appeal from the Commission's rulemaking process in *Central Maine Power Company v. Public Utilities Commission*, 1999 ME 119, ¶ 1, 734 A.2d 1120. In that case, we vacated on constitutional grounds part of a Commission rule requiring T&D utilities to submit for the Commission's review any educational materials that the utilities planned to distribute to the public, holding that such a requirement amounted to an unconstitutional prior restraint on speech. *Id.* ¶¶ 1, 14, 17. Neither the Commission, the Public Advocate, nor any amici challenged CMP's assertion of jurisdiction under 35-A M.R.S. § 1320(5), and we did not address jurisdiction in the opinion. To the extent that *CMP* can be read to provide a positive statement of law contradicting our holding herein, we overrule the holding of *CMP* on jurisdiction.

when it acts in its adjudicatory role—not in its rulemaking capacity. *Id.* The remainder of section 1320 similarly focuses on the Commission in its adjudicatory role. For example, section 1320(3) authorizes the replacement of the terms "court," "clerk," and "clerk of courts" with their counterparts "commission" and "administrative director of the commission." *Id.* § 1320(3). Furthermore, the entirety of chapter 13—of which 1320 is a part—focuses on the Commission's adjudicatory role. *See* 35-A M.R.S. §§ 1301-1323 (2017).

[¶10] The context of these provisions demonstrates that the Legislature intended, appropriately, to limit jurisdiction for direct appeals to the Law Court to only those appeals from the Commission's action in carrying out its adjudicatory responsibilities, in which the facts will already have been determined and a full record of the adjudicatory proceeding will have been made. No direct appeal is provided when the Commission has exercised its rulemaking authority.

[¶11] This interpretation is consistent with the language of section 1320(6), which provides:

> **6. Law Court jurisdiction is exclusive.** The Law Court has exclusive jurisdiction over appeals and requests for judicial review of final decisions and of rulings and orders subject to subsections 1 and 5, *with the exception of the Superior Court's jurisdiction to review rules under Title 5, section 8058*.

8

(Emphasis added.) In turn, 5 M.R.S. § 8058 authorizes review by the Superior Court where an administrative agency acts pursuant to its rulemaking authority. Thus, the Legislature expressly excepted from the Law Court's exclusive jurisdiction appeals from rulemaking proceedings that are properly brought to the Superior Court.

[¶12] Nevertheless, CLF contends that the exception in section 1320(6) merely limits the *exclusive* jurisdiction of the Law Court over final adjudicatory decisions of the Commission. CLF interprets the exception to implicitly recognize that the Superior Court and the Law Court share *concurrent* jurisdiction over appeals challenging the Commission's exercise of its rulemaking authority. This argument, however, is foreclosed by 4 M.R.S. § 105(4) (2017), which provides:

> **4. No jurisdiction, powers, duties or authority of the Law Court.** The Superior Court does not have and may not exercise the jurisdiction, powers, duties and authority of the Supreme Judicial Court sitting as the Law Court.

By its express language, the Superior Court's enabling statute thus precludes any inference that the Law Court and the Superior Court share concurrent jurisdiction.

[¶13]  In light of the entire statutory scheme of which section 1320 is a part, we conclude that any appeal from Commission rulemaking proceedings must be brought originally in the Superior Court.

[¶14]  Because all of the issues raised by CLF in this appeal are challenges to the Commission's exercise of its rulemaking authority, whether or not they are couched in terms of "questions of law" related to that appeal, we do not, and should not, have jurisdiction over direct appeals from a rulemaking proceeding. 35-A M.R.S. § 1320(1).  Accordingly, we must dismiss the appeal.

The entry is:

Appeal dismissed.

Sean Mahoney, Esq., and Emily K. Green, Esq., Conservation Law Foundation, Portland, for appellant Conservation Law Foundation

Stephen F. Hinchman, Esq., ReVison Energy, LLC, Portland, for appellant ReVison Energy, LLC

Andrew Landry, Esq., and Anthony W. Buxton, Esq. (orally), PretiFlaherty, Augusta, for appellant Industrial Energy Consumers' Group

Catherine B. Johnson, Esq., Natural Resources Council of Maine, Augusta, for appellant Natural Resources Counsel of Maine

Lee L. Ewing, Esq., Amy B. Mills, Esq., and Mitchell M. Tannenbaum, Esq. (orally), Maine Public Utilities Commission, Augusta, for appellee Maine Public Utilities Commission

Public Utilities Commission docket number 2016-00222
FOR CLERK REFERENCE ONLY