STATE OF MAINE                                    BUSINESS AND CONSUMER COURT
CUMBERLAND, ss                                    DOCKET NO. BCD-CV-2017-32

THE WITHAM FAMILY          )
LIMITED PARTNERSHIP,       )
                           )
          Plaintiff,       )
                           )
v.                         )                      **ORDER ON PLAINTIFF'S**
                           )                      **MOTION FOR PARTIAL**
D.B.L. ENTERPRISES, INC.   )                      **SUMMARY JUDGMENT**
and                        )
                           )
LINDA SHELTON,             )
                           )
          Defendants,      )
_____)
                           )
D.B.L. ENTERPRISES, INC.   )
                           )
          Plaintiff,       )
                           )
v.                         )
                           )
DAVID J. WITHAM and DAVID  )
C. WITHAM                  )
                           )
          Defendants       )
                           )

Before the court is the Plaintiff/Counterclaim Defendant Witham Family Limited

Partnership's (WFLP) motion for partial summary judgment on all Defendants/Counterclaim

Plaintiffs' counterclaims "related to" the Employee Benefit Programs.

        I.      Facts

WFLP and D.B.L. Enterprises, Inc. (D.B.L.) are the sole members of W.S. Atlantic,

LLC.[1]  (S.M.F. ¶ 1.)  W.S. Atlantic, LLC owns and operates the Hampton Inn Hotel in Bar

Harbor, Maine, which has been open for business since 2015. (S.M.F. ¶ 2.) WFLP claims it is the

_____

[1] D.B.L. asserts that as a withdrawing member, WFLP no longer holds a 50 percent interest in W.S. Atlantic, LLC.

1

policyholder and administrator of the following: a health insurance plan entered into between Aetna Life Insurance Company and WFLP; a dental insurance plan entered into between Northeast Delta Dental and WFLP; a Group Life, Accidental Death and Dismemberment Insurance Plan funded by The Lincoln National Life Insurance Company; a Group Long Term Disability Insurance Plan funded by The Lincoln National Life Insurance Company; a Group Life and Dependent Life Insurance Plan funded by The Lincoln National Life Insurance Company; and a Weekly Disability Income Insurance Plan funded by The Lincoln National Life Insurance Company.[2] (S.M.F. ¶¶ 4-9.) WFLP is the plan administrator of the Witham Family, L.P. 401(k) Plan.[3] (S.M.F. ¶ 10.) Without authorization or agreement between WFLP and the LLC, WFLP requires LLC employees to participate in Employee Benefit Programs.[4] (S.M.F. ¶ 11.)

Counterclaim Plaintiffs' first amended counterclaim against WFLP states, "[t]he Witham Partnership has continued to administer employee benefit programs, such as health insurance and

---

[2] Counterclaim Plaintiffs object that the above-mentioned plans are not attached to the affidavit of Donna Mitchell as required by Rule 56(e), and therefore do not support WFLP's assertions related to these documents. M.R. Civ. P. Rule 56(e), states "sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." Without a sworn or certified copy of the referenced documents, the summary judgment record does not support WFLP's assertions related to these documents. Counterclaim Plaintiffs also deny these statements.

[3] Counterclaim Plaintiffs objected that this plan was not attached to the affidavit of Donna Mitchell as required by Rule 56(e). Pursuant to M.R. Civ. P. 56(e), "the court may permit affidavits to be supplemented or opposed by . . . further affidavits." Counterclaim Defendant included a Supplemental affidavit of Donna Mitchell in its Reply Statement of Material Fact and attached as exhibits "Related Participating Employer Election Attachment," which was not executed, naming the "Witham Family Limited Partners 401(k) Profit Sharing Plan and Trust;" the "Witham Family, L.P. 401(k) Plan Participation Agreement;" and "Adopting Resolution." These documents were previously not produced during discovery, even though Counterclaim Plaintiffs asked for "documents relating to any retirement benefit or 401k plan" in a request for documents on September 19, 2017. The Participation Agreement and Adopting Resolution were signed by Donna Mitchell, yet Counterclaim Plaintiffs further object that WFLP has not provided evidence that Donna Mitchell was authorized to sign on behalf of the LLC. While WFLP did attach documents referencing the 401(k) plan, the plan itself was not attached.

[4] Counterclaim Defendant argues in its Reply to Counterclaim Plaintiff's Opposing Statement of Material Facts, "The cited testimony. . . supports only that two witnesses are unaware of . . . an agreement [for WFLP to provide benefits to the LLC]; it does not establish that such an agreement does not exist." Again, Counterclaim Plaintiffs argue Counterclaim Defendants did not provide evidence that Donna Mitchell was authorized to sign on behalf of the LLC, and therefore documents referencing an agreement are not valid.

2

retirement plans, when such programs are not in compliance with applicable law and when such programs should be administered and overseen by Shelton." (1st Amend. Countercl. ¶ 33.) Counterclaim Plaintiffs' counterclaim includes Count I Breach of Contract, Count II Specific Performance, Count III Declaratory Judgment,[5] and Count IV Breach of Fiduciary Duty.

II.    Discussion

A.  Standard of Review

Summary judgment is granted to a moving party where "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." M.R. Civ. P. 56(c).  A motion for summary judgment must be supported by a separate statement of material facts with citations to record evidence that would be admissible at trial.  *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 6, 770 A.2d 653.  "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." *Lougee Conservancy v. CityMortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774 (quoting *Stewart-Dore v. Webber Hosp. Ass'n*, 2011 ME 26, ¶ 8, 13 A.3d 773).  On a motion for summary judgment, the facts are viewed in "the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63.

Summary judgment is appropriate "if the defendant has moved for summary judgment, the evidence favoring the plaintiff is insufficient to support a verdict for the plaintiff as a matter of law." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18 (internal citation omitted).  To survive a defendant's motion for summary judgment, the nonmoving plaintiff must demonstrate that material facts are disputed and must establish a prima facie case for every element of the plaintiff's cause of action. *Id.* at ¶ 8.  Record references must "refer to evidence of a quality that

---

[5] Count III Declaratory Judgment was partially granted pursuant to a Combined Order dated July 26, 2019.

3

could be admissible at trial." *Doyle v. Dep't of Human Servs.*, 2003 ME 61, ¶ 12, 824 A.2d 48 (quoting *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 6, 770 A.2d 653, 656).

B. Analysis

WFLP seeks partial summary judgment on all D.B.L. claims related to the Employee Retirement Income Security Act (ERISA) for a lack of subject matter jurisdiction. Whether a court has subject matter jurisdiction is a matter of law for the court. *Windham Land Tr. v. Jeffords*, 2009 ME 29, ¶ 19, 967 A.2d 690. WFLP argues the Superior Court lacks subject matter jurisdiction in this case because ERISA grants exclusive jurisdiction to district courts of the United States. 29 U.S.C. §§ 1001-1461 (2019). Pursuant to 29 U.S.C. § 1132, "[a] civil action may be brought . . . (3) by a participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1132(a)(3). "[T]he district courts of the United States shall have exclusive jurisdiction of civil actions under this title brought by the Secretary or by a participant, beneficiary, or fiduciary." 29 U.S.C. § 1132(e)(1). Section 1109 provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 411 of the Act.

29 U.S.C. § 1109(a).

Counterclaim Plaintiffs argue they are neither participants, beneficiaries, or fiduciaries of an employee benefit plan. "ERISA makes clear that the status of the parties is essential to an ERISA fiduciary duty claim." *Group Hospitalization & Med. Servs. v. Merck-Medco Managed*

4

*Care, LLP*, 295 F. Supp. 2d 457, 461 (D. N.J. 2003). Therefore, a central question to this jurisdictional issue is whether D.B.L. is a fiduciary under ERISA, because otherwise the claim would not fit within ERISA's framework and would therefore not be preempted.

> A person is a fiduciary with respect to an ERISA plan if
>
> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation . . . with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

ERISA's definition of fiduciary may seem broad. Despite its breadth, ERISA's definition of fiduciary does not attach liability to every person with a logical connection to the plan. According to Linda Shelton, "neither [she], nor D.B.L. exercises any control over the employee benefit programs sponsored and/or administered by the Witham Partnership." Aff. of Linda Shelton Line 7. There is no record evidence that Shelton or D.B.L. render investment advice. Nor is there any evidence that either of the aforementioned parties has any discretionary authority or responsibility in the administration of the plan. In fact, WFLP does not disagree with these propositions. WFLP admits throughout its filings that, not only is it the policy holder of the plans, but it is also the administrator of those plans. (Pl. Mot. for Summ. J. at 3-4.) Without some indication that Shelton or D.B.L. played a role in the management or administration of the Plan, neither Shelton nor D.B.L. can be accurately characterized as a fiduciary of the Employee Benefit Programs provided to employees of the LLC.

Even if D.B.L. had standing to bring an ERISA claim, the counterclaims do not sufficiently "relate to" ERISA. Congress has mandated that ERISA preempts all state law causes of action "insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C.

§ 1144(a).  The analysis thus involves: "(1) whether the plan at issue is an 'employee benefit plan' and (2) whether the cause of action 'relates to' this employee benefit plan." *McMahon v. Digital Equip. Corp.*, 162 F.3d 28, 36 (1st Cir. 1998).

ERISA applies to "any employee benefit plan if it is established or maintained . . . by any employer engaged in commerce or in any industry or activity affecting commerce. . . ." 29 U.S.C. § 1003(a)(1).  An "employee benefit plan" is "any plan . . . established or maintained by an employer . . . to the extent that by its express terms or as a result of surrounding circumstances such plan. . . provided retirement income to employees or results in a deferral of income."  29 U.S.C. § 1002(2)(A).  While WFLP has not provided evidence of the named plans it deems part of the "employee benefits plan," this Court will nevertheless address whether the cause of action "relates to" an employee benefits plan to determine its jurisdiction over D.B.L.'s counterclaims.

In determining whether the counterclaims are preempted by ERISA, the Court must determine whether the cause of action "relates to" the employee benefit plan. "A law 'relates to' an employee benefit plan . . .if it has a connection with or reference to such a plan." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990) (quoting *Shaw v. Delta Air Lines*, 463 U.S. 85, 96-97 (1983)). "[T]o determine whether a state law has the forbidden connection, [the court] look[s] . . . to 'the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive,' as well as to the nature of the effect of the state law on ERISA plans." *Cal. Div. of Labor Stds. Enforcement v. Dillingham Constr., N.A.*, 519 U.S. 316, 325 (1997) (quoting *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.* 514 U.S. 645, 658-59 (1995)). As the Supreme Court has noted, there is a "frustrating difficulty" in defining the term 'relates to.' *Travelers,* 514 U.S. at 656. There is no doubt that Congress intended ERISA's preemption provision to have a broad reach, however, we know that

6

"pre-emption does not occur . . . if the state law has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability." *District of Columbia v. Greater Washington Bd. of Trade,* 506 U.S. 125, 130, n.1 (1992). This dichotomy has tasked courts with trying to hit a moving target. Common-sense and subtle guidance from the Supreme Court, however, slows the target and steadies the court's hand.

In *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.* 514 U.S. 645 (1995), the Supreme Court held that a New York law which governed the surcharges that hospitals could collect from patients with different types of insurance plans "[did] not 'relate to' employee benefit plans within the meaning of ERISA's pre-emption provision . . . and accordingly suffer[ed] no pre-emption." *Travelers*, 514 U.S. at 649. In the Court's decision it makes clear that ERISA pre-empts more than just direct regulation of ERISA plans, but that does not mean ERISA subsumes all laws that only have an indirect or incidental effect on ERISA plans. *See id.* at 660. These laws of general applicability were not the object of Congress' intent in drafting ERISA's pre-emption provision. *See id* at 661-62. Finally, the Court confirmed what it had already announced in *Mackey* that laws of general applicability that only have a remote and indirect impact on ERISA plans are not pre-empted. *See generally id. See also Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825 (1988); *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990).

Counterclaim defendants argue that because counterclaim plaintiffs seek to remove WFLP as administrator of the employee benefits plan, the claims fall under ERISA. The Court concludes that WFLP's argument is misplaced, as the gravamen of D.B.L. and Ms. Shelton's counterclaim is to enforce their rights under the LLC Agreement, including their right to administer benefit plans to employees of the LLC. Given the nature of the dispute between the

7

parties, the Court views the Counterclaim as having a "tenuous, remote, or peripheral" connection to the ERISA plans in question such that any state action, including a state court judgment, would not be preempted. *See Ciampi v. Hannaford Bros. Co.* 681 A. 2d 4, 8 (Me. 1996).

In sum, D.B.L. is not an ERISA fiduciary, the 401(k) plan referenced in the documents attached to WFLP's reply may or may not qualify as an ERISA "employee benefits plan," and D.B.L.'s counterclaims are not sufficiently "related to" the employee benefits plan to warrant preemption of its counterclaims.

The entry is:

Plaintiff WFLP's Motion for Partial Summary Judgment is DENIED.

Pursuant to M.R. Civ. P. 79(a) the Clerk is hereby directed to incorporate this Order by reference in the docket.

Date: August 30, 2019            /s/

**M. Michaela Murphy**
**Justice, Business and Consumer Court**

| | |
|---|---|
| THE WITHAM FAMILY LIMITED PARTNERSHIP, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| D.B.L. ENTERPRISES, INC. and | ) ) ) |
| LINDA SHELTON, | ) ) |
| Defendants | ) ) |
| | ) ) |
| D.B.L. ENTERPRISES, INC. | ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| DAVID J. WITHAM and DAVID C. WITHAM | ) ) ) |
| Defendants | ) ) ) |

**COMBINED ORDER**

Before the court is (I) Plaintiff Witham Family Limited Partnership's motion to strike Paul Coston's opinions and preclude him from testifying as an expert witness, (II) Defendant/counterclaim Plaintiff D.B.L. Enterprises, Inc. and Defendant Linda Shelton's motion for partial summary judgment, and (III) Defendants D.B.L. Enterprises, Inc. and Linda Shelton's motion *in limine* to preclude the testimony of Earle Wason, Veena Gaines, James Berry, and Patrick Morgan. Defendants move for partial summary judgment on Count I of Plaintiff's Complaint (dissolution of the LLC pursuant to 31 M.R.S. § 1595(1)(D)), Count II of Defendants' Counterclaim (specific performance of the 2013 LLC Operating Agreement), and Count III of

1

Defendants' Counterclaim (declaratory judgment of parties' rights and responsibilities under the 2013 LLC Operating Agreement).

**BACKGROUND**

I.    Facts

The following facts, derived from Defendants D.B.L. Enterprises, Inc. ("D.B.L.") and Linda Shelton's Statement of Material Facts and Plaintiff Witham Family Limited Partnership's ("WFLP") Statement of Additional Material Facts, are undisputed unless otherwise noted. Plaintiff Witham Family Limited Partnership and Defendant D.B.L. Enterprises, Inc. are the sole members of W.S. Atlantic, LLC ("LLC"), a Maine limited liability corporation. (S.M.F. ¶¶ 9-10.) WFLP and D.B.L. both hold a 50 percent membership interest in the LLC, which is the owner and operator of the Hampton Inn Hotel in Bar Harbor, Maine ("Hotel"). (S.M.F. ¶¶ 11-12.) The Hotel opened in 2015. (S.M.F. ¶ 12.)

From May 1, 1996 to April 28, 2008, David J. Witham (Mr. Witham) and The David J. Witham BHI Revocable Trust were general partners of WFLP.[1] (S.M.F. ¶¶ 2, 4.) On April 28, 2008, The David J. Witham BHI Revocable Trust withdrew as a general partner of WFLP, leaving Mr. Witham the sole partner of WFLP. (S.M.F. ¶¶ 4, 5.) As early as 2008, Mr. Witham was diagnosed with Parkinson's disease. (S.M.F. ¶ 52.) Defendant Linda Shelton (Ms. Shelton) is the President of D.B.L. (S.M.F. ¶ 8.)

A.    2012 Agreement

On March 24, 2012, Mr. Witham emailed Attorney Alison King that he and Ms. Shelton intended to form an LLC to build a 75 to 125-room hotel.[2] (S.M.F. ¶ 13.) On March 25, 2012,

---

[1] WFLP objects to this fact on the grounds that Attorney Alison King has no personal knowledge but otherwise admits this fact.

[2] WFLP argues this correspondence was not authenticated during Attorney King's deposition because she did not recall receiving the email, and would therefore not be admissible at trial. Defendants argue Attorney King produced

Mr. Witham wrote to Attorney King requesting that she would draw up the LLC and membership agreements.[3] (S.M.F. ¶ 14.) Attorney King represented the LLC and not Mr. Witham, Ms. Shelton, or any affiliated entities. (S.M.F. ¶ 15.)

On July 10, 2012, Attorney King sent Ms. Shelton and Mr. Witham a draft operating agreement for the LLC. (S.M.F. ¶ 17.) In an email from Mr. Witham to Attorney King on October 16, 2012, Mr. Witham discussed a "redemption structure" to provide a "formula whereby a price for tHe [sic] shares of a MEMBERB [sic] who Be[c]omes DISABLED OR IS DECEASEDD [sic] IS ESTABLISHED AT 3x THE PRIOR 12 MONTHS GROSS ROOM SALLES [sic] LESS THE CURRENT MORTGAGE." (S.M.F. ¶ 18; Response to S.M.F. ¶ 18.)

On November 9, 2012, Mr. Witham proposed a formula for "a first offer to buy the shares of the selling member," proposing that "the value of the company shall be determined by multiplying the gross room revenue (ex sales tax) x 4 less applicable debt." (S.M.F. ¶ 20; Response to S.M.F. ¶ 20.) On November 15, 2012, Attorney King emailed Mr. Witham and Ms. Shelton with a revised version of the LLC operating agreement. (S.M.F. ¶ 22.) On November 15, 2012, Mr. Witham responded "I' [sic] GOOD WITH THIS AGREEMENT." (S.M.F. ¶ 23.) Mr. Witham also wrote "THE WORDS 'GROSS ROOM REVENUE' AND 'EX SALES TAX' ARE GENERALLY ACCEPTED AS MEANING THE BASIS THAT INTEND. PERHAPS 'EX' COULD BE EXPANDED TO 'EXCEPT NO SALES TAX IS INCLUDED IN THE NUMBERS 'APPLICABLE DEBT' COULD BE EXPANDED TO SAY 'SUBTRACTING THE MORTGAGE BALANCE AS OF THE END OF THE MONTH THAT THE GROSS ROOM REVENUE IS TAKEN." (S.M.F. ¶ 24; Response to S.M.F. ¶ 24; King Depo. Ex. 5.)

---

this email from her files and testified that she remembered responding to this email on a Saturday, and it is therefore authenticated. The email was attached to Attorney King's deposition as Exhibit 53.

[3] WFLP argues this correspondence was not authenticated but Defendants argue it was.

On November 16, 2012, Attorney King emailed Mr. Witham, copying Ms. Shelton, with a revised version of the LLC operating agreement "with slight modification to the valuation language to clarify the formula." (S.M.F. ¶ 25.) Both the November 15 and November 16 versions stated in Section 10.3 that the redemption formula:

> will be applied as a first offer to buy the shares of the withdrawing member. Notice of such election shall be given to the withdrawing Member or Member's personal representative or trustee in bankruptcy. If the offer is not accepted, the withdrawing member may offer to sell the membership interest in the open market.

(Add'l S.M.F. ¶ 4.) On November 16, 2012, Mr. Witham emailed Attorney King, copying Ms. Shelton, that he believed the capital contribution of each member would be $1,500,000. (S.M.F. ¶ 26; Response to S.M.F. ¶ 26.)

On November 30, 2012, Ms. Shelton emailed Mr. Witham, not copying Attorney King, attaching a revised version of the agreement removing the language in Section 10.3 that a withdrawing member could sell its interest on the open market.[4] (Add'l S.M.F. ¶ 6.) The language in Section 10.3 stated:

> [u]pon the death of one member, the remaining member. . . if interested, must elect to exercise the purchase of the entire interest of the deceased member using the predetermined formula. . . . The remaining member may offer a lessor amount to which the remaining estate can accept or reject the offer.[5]

(Add'l S.M.F. ¶ 7.) Neither Attorney King nor Ms. Shelton recall speaking with Mr. Witham about changes to the operating agreement. (Add'l S.M.F. ¶¶ 9, 10.)

Mr. Witham and Ms. Shelton signed the Operating Agreement of W.S. Atlantic LLC dated December 12, 2012. (S.M.F. ¶ 27.) The signature lines for the 2012 Operating Agreement listed Mr. Witham and Ms. Shelton individually as the "members" but the Agreement also made

---

[4] Defendants deny this fact on the grounds that the record citation is an incorrect reference. Defendants attached the correct reference as Exhibit BB.

[5] Defendants deny this fact on the grounds that the record citation is an incorrect reference. Defendants attached the correct reference as Exhibit BB.

reference to WFLP and D.B.L. as members.[6] (S.M.F. ¶¶ 28, 29.) Article III of the Agreement stated that, "prior to or contemporaneously of this agreement the Members shall make initial capital contributions to the Company in the amounts set forth below opposite the name of each member: David Witham . . . $1,500,000 Linda Shelton . . . $2,050,003.00 (plus or minus)." (Add'l S.M.F. ¶ 13.) Section 10.1, "Events of Withdrawal" includes without limitation, "death or incompetency of a member."[7] (S.M.F. 30.) Section 10.3 "Liquidation of Interest of Withdrawing Member" provided the following,

> the value shall be the greater of 3.5 times gross revenues (not including sales tax) less debt (which shall mean the mortgage balance as of the end of the month that is used in determining the gross room revenue figure) or the member's capital account.

(S.M.F. ¶ 31; Response to S.M.F. ¶ 31.) The operating agreement stated that it "may only be amended by written consent of the Members." (Add'l S.M.F. ¶ 12.)

Machias Savings Bank signed a Loan Commitment letter dated January 25, 2013, and a Loan Commitment Addendum dated February 25, 2013. (S.M.F. ¶ 32.)

B.  2013 Agreement

On April 17, 2013, Matt Worthen, counsel for Machias Savings Bank, emailed Attorney King, stating and discussing "concerns with the LLC agreement."[8] (Add'l S.M.F. ¶ 14.) On May 9, 2013, Attorney King emailed Mr. Witham and Ms. Shelton that she would revise the operating agreement to name WFLP and D.B.L. as members and Mr. Witham as Manager.[9] (Add'l S.M.F.

---

[6] WFLP qualified that the 2012 Agreement "confused" whether the members were WFLP and D.B.L. or Mr. Witham and Ms. Shelton as individuals.

[7] WFLP qualified this statement that the section concluded with the sentence, "This language needs to be cleaned up."

[8] Defendants object to all references to Attorney Worthen as not material to the motion for partial summary judgment. Defendants cite the lack of evidence that Witham or Shelton ever received this email or any of the draft agreements sent between Attorney King and Attorney Worthen. Finally, because Attorney Worthen has not been designated as an expert witness, defendants object to his opinions regarding the 2012 Agreement.

[9] Defendants qualify their response to this fact that the 2012 Agreement already provided WFLP and D.B.L. as members.

5

¶ 20.) Mr. Witham replied, "ALISON OK TO PROCEED WITH THE WFLP AS THE MEMBER." (S.M.F. ¶ 35, Add'l S.M.F. ¶ 21.) On May 15, 2013, Attorney King emailed Mr. Witham and Ms. Shelton that the bank was uncomfortable with a provision limiting Mr. Witham's authority as Managing Partner to take no more than $200,000 in bank debt, and asked whether Mr. Witham and Ms. Shelton would agree to the removal of that language. (S.M.F. 36; Response to S.M.F. ¶ 36; Add'l S.M.F. ¶ 25.)

On May 16, 2013, Attorney King spoke with Ms. Shelton over the phone and noted "provisions re: death are important." (Add'l S.M.F. ¶ 28; Response to Add'l S.M.F. ¶ 28.) On May 22, 2013, Attorney King emailed Mr. Witham and Ms. Shelton with a revised operating agreement, stating "the terms remain the same but I have changed the language where it referred to the members as individuals with estates." (S.M.F. ¶ 39; Add'l S.M.F. ¶ 33.) Attorney King also wrote, "[p]lease review carefully and let me know if you would like any other changes." (S.M.F. ¶ 40.)

Attorney King did not witness Mr. Witham sign the May 22, 2013 Operating Agreement, but later understood that he signed it.[10] (S.M.F. ¶ 43; Add'l S.M.F. ¶ 35, Response to Add'l S.M.F. ¶ 35.) Ms. Shelton electronically signed the Agreement and sent it to Attorney King the same day. (S.M.F. ¶ 41.) The May 22, 2013 Agreement does not refer to the December 12, 2012 Agreement. (Add'l S.M.F. ¶ 38.) Article III of the 2013 agreement stated that, "prior to or contemporaneously of this agreement the Members shall make initial capital contributions to the Company in the amounts set forth below opposite the name of each member: WFLP . . . $1,500,000 D.B.L. . . . $2,050,003.00 (plus or minus)." (Add'l S.M.F. ¶ 36.)

---

[10] WFLP denies that Mr. Witham signed the 2013 Agreement. WFLP argues that Attorney King's statements relating to Mr. Witham's signature on the 2013 Agreement are hearsay not subject to any exception. However, the 2013 Agreement bears two signatures for Mr. Witham and it was Attorney King's understanding that Mr. Witham signed the 2013 Agreement. (King Dep. Tr. 239:16-17; 240:19-21; 2013 Operating Agreement.)

Article VI, Management, stated "The Company shall be managed by its Managers (May be referred to as Managing Partner). The Managing Partner shall have specific and limited authority to act on the Company's behalf. Initially, David J. Witham will serve as Managing Partner."[11] (S.M.F. ¶ 49; 2013 Operating Agreement 6.1, 3.) Further, it states, "Upon disability, incapacity, incompetence or death of David J. Witham, Linda Shelton shall immediately become Managing Partner with the same authority described above." (S.M.F. ¶ 49; 2013 Operating Agreement 6.1, 3.)

Article X, Section 10.1 of the Agreement provides that "in the event of the death or incapacity of David J. Witham WFLP shall become a Withdrawing Member." (S.M.F. ¶ 56.) Article X, Section 10.3, "Liquidation of Interest of Withdrawing Member," provides,

> If, following the withdrawal of a Member due to an event of voluntary of involuntary withdrawal or due to the death of David J. Witham or Linda Shelton, the other Member elects to continue the Company in accordance with this Agreement, the remaining Member shall purchase and thereby liquidate the Membership Interest of such withdrawing Member in accordance with this Section.
>
> DBL shall have the right to redeem WFLP's Membership Interest in the company if David J. Witham predeceases Linda Shelton . . . The valuation of the Membership Interest for redemption purposes shall be the greater of:
>
> 1. 3.5 times gross revenues (not including sales tax) less debt ("debt") shall mean the mortgage balance as of the end of the month that is used in determining the gross room revenue figure); or
> 2. The value of the Withdrawing Member's capital account at the time of redemption.
>
> The redemption of the Withdrawing Members Membership Interest shall include all of the Withdrawing Member's Membership Interest.

(S.M.F. ¶ 58.)

---

[11] WFLP objects to the extent defendants make a legal conclusion about the validity of the 2013 Operating Agreement.

7

Attorney King discussed the 2013 Operating Agreement with Mr. Witham at the June 19, 2013 closing. (S.M.F. ¶ 47; Response to S.M.F. ¶ 47.) Mr. Witham signed closing documents on behalf of WFLP and the LLC at the June 19, 2013 closing.[12] (S.M.F. ¶ 48.)

On January 9, 2015, Mr. Witham emailed Attorney King, Mr. Witham's son David C. Witham, and Attorney John Colliander, stating "we have some serious issues with the agreement . . . I have no knowledge of an operating [agreement] dated may 2013 maybe Alison does just one dated 12-12-12."[13] (Add'l S.M.F. ¶ 48.) On April 3, 2015, Michael Hodgins, an attorney for WFLP, wrote to Ms. Shelton inquiring about the formation and validity of the LLC. (Add'l S.M.F. ¶ 49.) Attorney Hodgins noted the agreement did not reflect Mr. Witham's intent as set forth in the original drafts.[14] (Add'l S.M.F. ¶ 49.) Mr. Witham resigned as sole partner of WFLP on April 19, 2016.[15] (S.M.F. ¶ 6.) Mr. Witham formally resigned as the Managing Partner of the LLC in December, 2016. (S.M.F. ¶ 53.) On November 25, 2017, Mr. Witham passed away. (S.M.F. ¶ 54.) On January 18, 2018, D.B.L. sent a letter to WFLP providing notice of D.B.L.'s election to redeem the Partnership membership interest. (S.M.F. ¶ 61-62.)

II.     Procedural Posture

On May 15, 2017, WFLP filed claims against defendants D.B.L. and Ms. Shelton for dissolution of the LLC pursuant to 31 M.R.S. 1595(1)(D) and 31 M.R.S. 1595(1)(E) and breach of fiduciary duty. On August 2, 2017, defendants Ms. Shelton and D.B.L. filed counterclaims against WFLP alleging breach of contract, specific performance, declaratory judgment, and breach of fiduciary duty. Defendant D.B.L. also filed cross claims against David C. Witham and

---

[12] WFLP objects and qualifies that Exhibits 10-12 to King Depo. do not represent documents signed by Mr. Witham at the closing, but that Mr. Witham did sign other documents at the closing.
[13] Defendants object to the relevance of this fact.
[14] Defendants object to the relevance of this fact and deny it because it would not be admissible in evidence.
[15] WFLP objects because Attorney King had no personal knowledge to authenticate the document supporting this fact.

8

the Estate of David J. Witham for breach of fiduciary duty. WFLP filed an amended complaint and second amended complaint. Defendants D.B.L. and Ms. Shelton filed an amended counterclaim. WFLP's claim for dissolution pursuant to 31 M.R.S. 1595(1)(E) was dismissed by the Court on March 7, 2019. Defendants moved for partial summary judgment on January 19, 2018 with a supporting statement of material facts.[16] On March 29, 2019, WFLP responded with a statement of 136 additional material facts.[17]

## STANDARD OF REVIEW

Summary judgment is granted to a moving party where "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." M.R. Civ. P. 56(c). A motion for summary judgment must be supported by a separate statement of material facts with citations to record evidence that would be admissible at trial. *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 5, 770 A.2d 653. "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." *Lougee Conservancy v. CityMortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774. On a motion for summary judgment, the facts are viewed in "the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63.

Summary judgment is appropriate "if the defendant has moved for summary judgment, the evidence favoring the plaintiff is insufficient to support a verdict for the plaintiff as a matter of law." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18 (internal citation omitted). To survive a defendant's motion for summary judgment, the nonmoving plaintiff must demonstrate that

---

[16] Of defendants' 67 supporting material facts, WFLP denied 12 facts and qualified 16 facts, denying some of the qualified facts in part. WFLP also objected to 30 facts on various grounds.

[17] Of WFLP's 136 opposing additional material facts, defendants denied 61, qualified 33, and admitted in part and denied in part 2. Defendants also objected to 108 facts on various grounds.

material facts are disputed and must establish a prima facie case for every element of the plaintiff's cause of action. *Id.* at ¶ 8. Record references must "refer to evidence of a quality that could be admissible at trial." *Doyle v. Dep't of Human Servs.*, 2003 ME 61, ¶ 12, 824 A.2d 48 (internal citation omitted). The parties may not "rely on conclusory allegations or unsubstantiated denials, but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact." *Polk v. Town of Lubec*, 2000 ME 152, ¶ 11, 756 A.2d 510 (quoting *Kenny v. Dept. of Human Servs.*, 1999 ME 158, ¶ 3, 740 A.2d 560).

## ANALYSIS

### I. Plaintiff's Motion to Strike

WFLP moves to strike the testimony of Paul Coston, the LLC's accountant, who has been designated as an expert witness by Defendants. Motions to strike assertions, denials or qualifications in a statement of material facts for summary judgment are not permitted. M.R. Civ. P. 56(i). While WFLP moves to strike Mr. Coston's opinions and testimony and not the assertions, denials, or qualifications in Defendants' statements of material fact, the opinions and testimony provide a basis for Defendants' statements of material fact. Defendants move for judgment on 67 statements of material fact, including the following two statements:

> 63. As of November 30, 2017, the balance of the Witham Partnership's capital account was $2,338,557.
> 64. As of November 30, 2017, a valuation based upon 3.5 times gross revenue (not including sales tax) less the mortgage balance totaled $2,154,714.[18]

(S.M.F. ¶ 63, 64.) Mr. Coston's affidavit states that calculating the capital accounts was within the scope of his ordinary course of accounting for the LLC, and that monthly room revenue figures were calculated based on information prepared by the LLC's bookkeeper. (Aff. Paul

---

[18] WFLP denies both of these facts.

10

Coston, ¶¶ 13-14, 22.) While WFLP attempts to sidestep the M.R. Civ. P. Rule 56(i) prohibition on striking statements of material fact by moving to strike the underlying testimony, the court will nevertheless address WFLP's arguments.

WFLP argues Mr. Coston's testimony is not within the scope of his expert designation. D.B.L.'s designation of Mr. Coston as an expert witness states,

> Mr. Coston is expected to testify about his calculations of the members' respective capital accounts and is also expected to testify about his calculation of gross room revenues of the Hotel for the 12-month period preceding November 30, 2017, calculations he performed in the ordinary course of his role as accountant for W.S. Atlantic, LLC.

(Pl.'s Mot. to Strike Ex. 2.) WFLP argues that because Mr. Coston testifies about his calculations of capital accounts and gross room revenues, his calculations actually involve the buyout formula, and Ms. Shelton's interpretation of the formula, which is outside the scope of Mr. Coston's expert witness designation. (Pl.'s Mot. to Strike 6.) WFLP's argument that making calculations within the scope of Mr. Coston's expert witness designation is at the same time outside the scope because those calculations can be used in a formula is without merit. The credibility of Mr. Coston and any rebuttal witness that provide alternate calculations of the formula are issues of weight and will be addressed by the fact finder. *See Hutz v. Alden*, 2011 ME 27, ¶ 15, 12 A.3d 1174 ("summary judgment is not the place to resolve weight and credibility issues").

Further, WFLP argues that Mr. Coston was induced to provide expert testimony under false pretenses and his expert testimony would violate professional responsibilities. WFLP's arguments are again without merit. WFLP requested Mr. Coston be designated as an expert witness, stating WFLP "is entitled to receive an expert witness designation for Coston and to have an opportunity to designate a rebuttal expert." (Pl.'s Mot. to Extend Time to Respond to Defs.' Mot. for Partial Summ. J. 6.) Defendants designated Mr. Coston as an expert witness and

11

limited the scope of his expert testimony to circumvent the very problems of which WFLP now complains. Therefore, WFLP's motion to strike Paul Coston's testimony as an expert witness is denied.

## II. **Defendants' Motion to Preclude Testimony**

Defendants move to preclude the testimony of WFLP's expert witnesses Earle Wason, Veena Gaines, James Berry, and Patrick Morgan. Maine Rules of Evidence state "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if such testimony will help the trier of fact to understand the evidence or to determine a fact in issue." M.R. Evid. 702. Expert testimony must also be relevant, which is defined as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." M.R. Evid. 401.

Defendants claim Mr. Wason's and Ms. Gaines' testimony should be excluded as irrelevant under M.R. Evid. 401. WFLP argues Mr. Wason was designated to provide opinions regarding the fair market value of the Hotel and Ms. Gaines has been designated to provide opinions regarding the value of residential real estate owned by the LLC. Because the buyout provision is ambiguous, *see infra* Discussion on Defendants' Motion for Summary Judgment on Count II, and WFLP claims the buyout provision is unconscionable, this testimony is relevant to determining the redemption price for WFLP's share in the LLC.

Defendants claim Mr. Berry's testimony should be excluded because he is not qualified, he purports to opine on issues of law, and he purports to opine on the credibility of a witness. WFLP argues that Mr. Berry instead offers testimony on the usage of trade regarding terms in the buy-out formula and has experience and expertise in the hospitality industry. WFLP argues

12

Mr. Berry's familiarity with terminology in the lodging industry does not equate to his offering a legal opinion. Usage of trade is relevant extrinsic evidence for resolving ambiguity in contract language. *See Clukey v. Town of Camden*, No. 2:11-CV-372-JHR, 2016 U.S. Dist. LEXIS 93670, at * 21-24 (D. Me. July 19, 2016). Defendants claim that Mr. Berry's testimony attacks the credibility of Paul Coston. Because questions of credibility are for the fact finder, to the extent Mr. Berry's testimony relates to the credibility of a witness, it is not admissible at trial. *See Hutz v. Alden* at ¶ 15; *State v. Lewisohn*, 379 A.2d 1192, 1203 (Me. 1977). Defendants' motion to exclude Mr. Berry's testimony is denied.

Lastly, in Defendants' motion to exclude testimony, they claim the testimony of Patrick Morgan, the President of WFLP, should be excluded because it is irrelevant, Mr. Morgan has no expertise and is not qualified, Mr. Morgan relies on erroneous facts, and Mr. Morgan's opinion is biased and unreliable. WFLP argues Mr. Morgan was educated in finance, accounting, and valuation principles including those particular to the hotel industry. WFLP further argues Mr. Morgan's experience in the hotel industry provides expertise in possible causes of revenue shortfalls, which is related to WFLP's Breach of Fiduciary Duty claim and is not considered on this motion for partial summary judgment. If an expert is qualified, the extent of his qualifications goes to the weight of the expert's testimony, which is a question for the fact finder. *See Hutz v. Alden* at ¶ 15; *State v. Cookson*, 2003 ME 136, ¶ 22, 837 A.2d 101. Defendants motion to preclude the testimony of WFLP's expert witnesses is denied.

III. **D.B.L. Enterprises, Inc. and Linda Shelton's Motion for Partial Summary Judgment**

    A. Count I of WFLP's Complaint – 31 M.R.S. § 1595(1)(D)

Count I of WFLP's Complaint for dissolution pursuant to 31 M.R.S. § 1595(1)(D) alleges the LLC should be dissolved because the LLC was deadlocked on who becomes Managing Partner once a member resigns, making it impracticable to conform to the LLC Agreement. (2nd Amend. Compl. 39-43.) "A limited liability company is dissolved, and its activities must be wound up, upon the occurrence of. . . the entry by the Superior Court of an order dissolving the limited liability company on the grounds that it is not reasonably practicable to carry on the limited liability company's activities in conformity with the limited liability company agreement." 31 M.R.S. § 1595(1)(D). Plaintiffs must provide evidence of a prima facie case that it was not reasonably practicable to carry on the LLC's activities in conformity with the LLC agreement. *See Curtis v. Porter*, 2001 ME 158, ¶ 7.

Defendants argue Ms. Shelton is the manager of the LLC pursuant to Section 6.1 of the 2013 Agreement, and the operation of the LLC was reasonably practicable with Ms. Shelton acting as manager pursuant to the LLC Agreement. (Defs.' Mot. Summ. J. 10.) Plaintiffs argue that neither the 2012 Agreement nor the 2013 Agreement is enforceable and the dissolution should be triggered by deadlock which occurred at Mr. Witham's retirement in 2016 because the agreement did not contemplate who becomes Managing Partner upon resignation of a member. (Pls.' Resp. to Defs.' Mot. Summ. J. 2.)

1. Enforceability of the LLC Agreement

First, WFLP argues that the 2013 Agreement is unenforceable because (A) no new consideration was given, (B) the 2013 Agreement does not specify how it relates to the 2012 Agreement, (C) the parties had no meeting of the minds, and (D) the 2013 Agreement is at odds with the LLC Act and is procedurally and substantively unconscionable.

i. Consideration for 2013 LLC Agreement

14

WFLP argues that no new consideration was given for the 2013 Agreement. Citing *Wescott v. Mitchell*, 95 Me. 377, 50 A. 21 (1901) and *Panasonic Communications v. State*, 1997 ME 43, ¶ 11, 691 A.2d 190, WFLP denies that Article III – Capital Contributions, which is the same in both the 2012 agreement and the 2013 agreement, constitutes new consideration for the 2013 agreement. However, *Panasonic Communications* stands for the proposition that an agreement to perform an existing contractual obligation benefiting only one party requires new consideration, and *Wescott* holds that adding obligations for only one party requires new consideration. *Panasonic Communications* at ¶¶ 11-12; *Wescott* 50 A. at 24.

Here, the 2013 Operating Agreement is not an agreement to perform an existing contractual obligation, but a bargained-for promise between two new parties. The 2012 Agreement signed by Mr. Witham and Ms. Shelton as individuals included consideration individually by Mr. Witham and Ms. Shelton. The 2013 Agreement signed by Mr. Witham and Ms. Shelton on behalf of WFLP and D.B.L., respectively, included consideration by WFLP and D.B.L., binding WFLP and D.B.L to the bargained-for promises of the 2013 Agreement. Furthermore, both parties to the 2013 Operating Agreement have obligations, and the agreement does not benefit only one party. Therefore, the 2013 Operating Agreement is a standalone LLC Operating Agreement with adequate consideration, as stated in Article III.

        ii.      <u>Relation Between 2012 and 2013 Agreement</u>

WFLP also argues the 2013 Agreement is unenforceable because it does not specify how it relates to the 2012 Agreement. "A binding integrated agreement discharges prior agreements to the extent that it is inconsistent with them." *Maine Mortg. Co. v. Tonge*, 448 A.2d 899, 902 (1982). While the 2012 Agreement stated it "may only be amended by written consent of the Members," the members to the 2012 Agreement are not the members to the 2013 Agreement.

15

The court may look to extrinsic evidence to reveal a latent ambiguity. *See Interstate Indus. Unif. Rental Serv., Inc. v. F.R. Lepage Bakery, Inc.*, 413 A.2d 516, 519 (Me. 1980) (allowing evidence to determine whether a contract was completely or partially integrated).

Mr. Witham wrote "OK TO PROCEED" with WFLP as the member of the 2013 Agreement, Ms. Shelton emailed Mr. Witham a markup version of the 2013 Agreement, his signature is on the 2013 Agreement on behalf of WLFP as its General Partner and on behalf of W.S. Atlantic as its Manager, and Attorney King recalls discussing various provisions with Mr. Witham and understood that he had signed the 2013 Agreement. While WFLP argues Mr. Witham did not knowingly consent to the buyout formula, which ultimately remained unchanged from the 2012 Agreement in that it did not add a fair market value provision, WFLP has provided no evidence to contradict Mr. Witham's consent to be bound by the 2013 Agreement.

### iii.    Meeting of the Minds

WFLP contends there was no meeting of the minds because the 2013 Agreement did not include a fair market value buyout provision. "To establish a legally binding agreement, the parties must have mutually assented to be bound by all of its terms, the assent must be reflected and manifested in the contract, either expressly or impliedly, and the contract must be sufficiently definite to enable the court to determine its exact meaning and fix exactly the legal liability of the parties." *Roy v. Danis*, 553 A.2d 663, 664 (Me. 1989). WFLP has not raised prima facie evidence that Mr. Witham did not intend to be bound by the terms of the 2013 LLC Agreement; only that in 2015 he did not remember it. The 2015 email from Mr. Witham that he had no knowledge of the 2013 Agreement is not evidence that Mr. Witham did not assent to the Agreement at the time of its formation. In the same email, he acknowledged that Attorney King may have knowledge of or information on the 2013 Agreement.

16

WFLP's claim that Mr. Witham never signed the 2013 Agreement (and therefore did not intend to be bound by the Agreement) is without merit. WFLP argues that Attorney King's statements relating to Mr. Witham's signature on the 2013 Agreement are hearsay not subject to any exception; therefore, no record evidence establishes Mr. Witham's signatures on the 2013 Agreement. However, two signatures appear on the 2013 Agreement for Mr. Witham, on behalf of WFLP and on behalf of the LLC. WFLP may not "rely on conclusory allegations or unsubstantiated denials, but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact." *Kenny v. Dept. of Human Servs.*, 1999 ME 158, ¶ 3. WFLP's denial is unsubstantiated. The evidence offered by Defendants that Attorney King understood the signatures on the 2013 Agreement to be Mr. Witham's, Mr. Witham had previously stated "OK TO PROCEED" with the 2013 Agreement, Attorney King reviewed terms of the 2013 Agreement with Mr. Witham at the closing on June 19, 2013, and Mr. Witham proceeded to sign documents on behalf of WFLP and the LLC at the closing on June 19, 2013 convinces the Court that no reasonable jury could find that Mr. Witham did not sign or intend to be bound by the 2013 Agreement. *See Dyer v. DOT*, 2008 ME 106, ¶ 26 n.6, 951 A.2d 821 (quoting *Scott v. Harris*, 550 U.S. 372, 80-81).

   iv. <u>Unconscionability</u>

Lastly, WFLP argues the LLC Agreement is at odds with the LLC Act and unconscionable. WFLP offers no argument on why the LLC agreement is at odds with the LLC Act, but argues the Agreement's buyout provision, Art. X, is procedurally and substantively unconscionable. "Procedural unconscionability is analyzed based on the circumstances that existed at the time the contract was adopted, and generally refers to the exploitation of unequal

17

bargaining power between the parties." *Blanchard v. Blanchard*, 2016 ME 140, ¶ 19, 148 A.3d 277 (internal citation omitted). Substantive unconscionability focuses on the terms of the agreement, considering "whether those terms are so one-sided as to shock the conscience." *Id.* (quoting *Barrett v. McDonald Invs., Inc.*, 2005 ME 43, ¶ 36, 870 A.2d 146).

WFLP asserts that Ms. Shelton had undue influence over Mr. Witham in support of its argument that the 2013 Agreement was procedurally unconscionable. WFLP must show "the existence of a confidential relationship and the superior party's receipt of a benefit flowing from the relationship in order to create a presumption of undue influence." *Estate of Gagnon*, 2016 ME 129, ¶ 10, 147 A.3d 356. A confidential relationship is "one in which an individual placed trust and confidence in the defendant and there was a great disparity of position and influence in the relationship." *Theriault v. Burnham*, 2010 ME 82, ¶ 7, 2 A.3d 324. Here, WFLP has provided no evidence of a confidential relationship. Furthermore, Mr. Witham had extensive hotel experience and Ms. Shelton had no hotel experience. WFLP cites to Mr. Witham suffering from Parkinson's disease to show a disparity of position and influence; however, Mr. Witham continued as sole General Partner and Managing Partner of WFLP until 2016, WFLP contends Mr. Witham was never incapacitated, and Mr. Witham corresponded with Attorney King individually on multiple occasions.

WFLP next asserts that the buyout formula, Art. X, is substantively unconscionable because the fair market value of W.S. Atlantic LLC's property is ten times the defendants' calculation of the buyout formula, a disparity that shocks the conscience. As discussed below, the parties agree that Art. X is ambiguous,[19] therefore, the court will not decide on summary

---

[19] During the hearing on the motion for summary judgment, both parties admitted the buyout provision was ambiguous.

18

judgment whether the terms are so one-sided to shock the conscience, as the terms are ambiguous.

        v.      <u>Deadlock</u>

WFLP argues that dissolution pursuant to 31 M.R.S. § 1595(1)(D) was triggered by David J. Witham's retirement in 2016 because of deadlock over who should become Managing Partner. The LLC Act instructs that "upon application by a member, the Superior Court determines [if] it is not reasonably practicable to carry on the limited liability company's activities in conformity with the limited liability company agreement," which would warrant dissolution. 31 M.R.S. § 1595 (1)(D). In addressing deadlock and determining whether it is "reasonably practicable" to carry on the activities of the LLC pursuant to the LLC agreement, the Court has found deadlock irresolvable when the day-to-day operation of the LLC, including compensating officers and employees, were paralyzed and where there were no signs of reconcilability. *Laskey v. L & L Manchester Drive-In, Inc.*, 216 A.2d 310 (1966).[20]

Here, day-to-day operation continued throughout the period between Mr. Witham's resignation and death, with Ms. Shelton acting as *de facto* Managing Partner, and after Mr. Witham's death with Ms. Shelton as Managing Partner. Mr. Witham did not appoint a manager before his death, and the contract unambiguously states, that "[u]pon disability, incapacity, incompetence or death of David J. Witham, Linda Shelton shall immediately become Managing Partner with the same authority described above." (S.M.F. ¶ 49; 2013 Operating Agreement 6.1, 3.) WFLP has provided no evidence that the deadlock, if any, continued after Mr. Witham's

---

[20] Similarly, Delaware Courts interpreting an identical provision of the Delaware LLC Act found that when an LLC was in dire straits financially, had no office, no operating revenue, no prospects of equity or debt infusion, suffered from a deadlocked board, and had no reasonably practical means to operate its business, judicial dissolution was warranted. *Fisk Ventures, LLC v. Segal*, 2009 Del. Ch. LEXIS 7. Further, when two 50% owners of an LLC were required to make joint decisions to authorize strategy by the LLC agreement and were at an impasse, and the LLC Agreement did not provide a mechanism to break the deadlock, judicial dissolution was warranted. *Vila v. BVWebTies LLC*, 2010 Del. Ch. LEXIS 202, *21-22.

death in 2017. Determining whether the Agreement contemplated resignation of a Managing Partner is therefore moot. Because the Court finds the 2013 Agreement unambiguously states Ms. Shelton becomes the Managing Partner upon the death of Mr. Witham, Mr. Witham died in 2017, and the LLC's operation in conformity with the LLC Agreement is reasonably practicable, Defendants' motion for summary judgment on Count I of Plaintiff's Complaint is granted.

B. Count II of Defendants' Counterclaim

Count II of Defendants' Counterclaim for specific performance of the LLC Operating Agreement claims D.B.L. is entitled to purchase the Witham Partnership's membership interest in the LLC based upon incapacity or the death of Witham. (Amend. Countercl. ¶ 50-52.) WFLP again argues that the May 2013 Agreement is unenforceable and the buyout provision of the May 2013 Agreement does not apply, but also argues that even if the Agreement is enforceable, the buyout provision is ambiguous and does not support the amount defendants claim.

WFLP argues the buyout formula is ambiguous because the terms are not clearly defined. WFLP argues the buyout provision of Section 10.3 uses "gross revenues," which is different from "gross room revenues." WFLP also argues the provision is ambiguous because it does not provide a timeframe of gross revenues to multiply by 3.5. WFLP's expert identified eight timeframes that would produce different outcomes for the buyout provision. WFLP argues that defendants' expert Paul Coston used both "gross room revenues" and a timeframe provided by Ms. Shelton to determine the buyout amount, neither of which are supported by the language of the buyout provision.

WFLP also argues that the provision does not provide any information on calculating the LLC's debt or which assets to include in calculating members' capital accounts. Defendants

argue the term debt is clear, and the members' capital account calculation is straightforward. WFLP argues the provision also does not contemplate dividing any figures by two, or the number of LLC members, which defendants' expert Paul Coston did in his calculations. Lastly, WFLP contends that while serving as de facto manager, Shelton engaged in fraudulent practices to lower Hotel revenues, which ultimately would reduce the amount to which WFLP would be entitled under the buyout formula.[21]

The central dispute related to this claim is whether the language of the buyout provision is ambiguous.[22] Whether a contract is ambiguous is a question of law. *Tondreau v. Sherwin-Williams Co.*, 638 A.2d 728, 730 (Me. 1994). A contract is ambiguous if its terms are susceptible of different interpretations. *Id.* "When there is an ambiguity in a written contract, and the record does not completely eliminate the possibility of an issue of material fact concerning the intent of the parties, summary judgment is inappropriate." *Id.* Both parties provide experts to opine on the language and calculation of the formula and members' capital accounts, identifying at least eight possible interpretations of the provision, and provide evidence of negotiations to determine the parties' intent. WFLP also provides experts to opine on the fair market value of the LLC, which it believes should be considered because it views the buyout provision is substantively unconscionable. Because the record does not eliminate the possibility of an issue of material fact concerning the intent of the parties in the buyout provision, Defendants' motion for summary judgment on Count II of their counterclaim is denied.

C. Count III of Defendants' Counterclaim – Declaratory Judgment

---

[21] This argument is related to Plaintiff's breach of fiduciary duty claim, which is not under consideration on this motion for partial summary judgment.

[22] During the hearing on the motion for summary judgment, both parties admitted the buyout provision was ambiguous.

Count III of Defendants' Counterclaim for a declaratory judgment seeks a determination of the parties' rights and legal relations with respect to the LLC and the Operating Agreement, specifically that Shelton is the Managing Partner of the LLC; WFLP is an involuntary withdrawing member and must convey its membership interest to D.B.L. according to the Operating Agreement; and lastly, defendants should be awarded the costs of the suit pursuant to 14 M.R.S.A. § 5962, and such other and further relief as the Court deems appropriate. (Amend Countercl. ¶¶ 53-62.) Pursuant to Maine's Declaratory Judgment Act, 14 M.R.S. §§ 5951-63, a party may obtain a declaration regarding the validity or construction of a contract and their rights, status or relations thereunder, and which complements additional or alternative remedies available. 14 M.R.S. §§ 5954-55; M.R. Civ. P. 57. The LLC Agreement explicitly states that Ms. Shelton becomes Managing Partner upon the death of David J. Witham. (2013 Agreement Art. VI.) WFLP filed a Suggestion of Death on the Record on December 4, 2017, stating that David J. Witham passed away. Article X includes that WFLP shall become a withdrawing member upon the death of David J. Witham. (2013 Agreement Art. 10.1.) Article X also states that upon the death of David J. Witham, the remaining member shall purchase and thereby liquidate the Membership Interest of the withdrawing member. (2013 Agreement Art. 10.3.) However, as stated above, the buyout formula provision of Article X is ambiguous.

Under the Declaratory Judgment Act, the court may make such award of costs as may seem equitable and just. 14 M.R.S. § 5962. However, the "American Rule" is that attorney's fees are not included in the element of costs or damages of the declaratory judgment act. *Dodge v. United Services Auto. Assoc.*, 417 A.2d 969, 975 (Me. 1980). The court does not award attorney's fees or costs to Defendants on Count III of their counterclaim.

22

The entry is:

1. Plaintiff's motion to strike Paul Coston's testimony is DENIED.

2. Defendants' motion to preclude Earle Wason, Veena Gaines, James Berry and Patrick Morgan's testimony is DENIED.

3. Defendants' motion for partial summary judgment is GRANTED in part and DENIED in Part as follows: Defendant's Motion is GRANTED as to Plaintiff's Count I, DENIED as to Defendant's Count II for specific performance, and DENIED IN PART and GRANTED IN PART as to Count III for a declaratory judgment.

Pursuant to M.R. Civ. P. 79(a) the Clerk is hereby directed to incorporate this Order by reference in the docket.

**Date: July 26, 2019**

<u>        /s        </u>
**M. Michaela Murphy**
**Justice, Business and Consumer Court**

STATE OF MAINE
CUMBERLAND, ss.

BUSINESS & COUNSUMER DOCKET
DOCKET NO. BCD-CV-17-32 ✓

THE WITHAM FAMILY LIMITED
PARTNERSHIP,

Plaintiff,

v.

D.B.L. ENTERPRISES, INC., et al.,

Defendants.

)
)
)
)
)
)
)
)
)
)
)

**ORDER GRANTING MOTION TO
DISMISS COUNT II OF SECOND
AMENDED COMPLAINT**

Pending before the Court is Defendants D.B.L. Enterprises, Inc. ("DBL") and Linda Shelton's motion to dismiss Count II of the Second Amended Complaint (the "Complaint") brought pursuant to M.R. Civ. P. 12(b)(6). Plaintiff Witham Family Limited Partnership ("WFLP") opposes the motion. Pursuant to its authority under M.R. Civ. P. 7(b)(7) the Court rules on the motion without holding oral argument.

## BACKGROUND

The following facts are taken from the Complaint and for purposes of the instant motion are assumed to be true. WFLP and DBL each have a fifty percent membership interest in W.S. Atlantic, LLC, (the "LLC") which owns and operates a Hampton Inn hotel in Bar Harbor. (Pl's Compl. ¶¶ 6-7.) David J. Witham was formerly the manager of the LLC, but he resigned as manager in December 2016. (Pl's Compl. ¶¶ 8, 10.) Linda Shelton, DBL's president, has assumed the role of *de facto* manager of the LLC since that time, but WFLP has refused to agree to her taking that position. (Pl's Compl. ¶ 11.) In fact, Plaintiffs claim that in her role as *de facto* manager, Ms. Shelton has undertaken a number of acts that are very detrimental to the LLC and, indeed, are illegal and fraudulent. (*See generally* Pl's Compl.) WFLP seeks, inter alia, judicial dissolution of

1

the LLC on the grounds that DBL as the member in *de facto* control of the LLC has acted and is acting in a manner that is illegal and fraudulent. *See* 31 M.R.S. § 1595(1)(E). (Pl's Compl. ¶ 45.)

STANDARD OF REVIEW

In reviewing a motion to dismiss under Rule 12(b)(6), courts "consider the facts in the complaint as if they were admitted." *Bonney v. Stephens Mem. Hosp.*, 2011 ME 46, ¶ 16, 17 A.3d 123. The complaint is viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* (quoting *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830). "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Id.* "The legal sufficiency of a complaint challenged pursuant to M.R. Civ. P. 12(b)(6) is a question of law" and thus subject to *de novo* appellate review. *Marshall v. Town of Dexter*, 2015 ME 135, ¶ 2, 125 A.3d 1141.

DISCUSSION

Defendants seek partial dismissal in the instant motion, which is directed only at Count II of the Complaint. Defendants argue that the statutory authority relied upon for this Count, 31 M.R.S. § 1595(1)(E), is not applicable based on the facts alleged.

Section 1595(1)(E) provides as follows:

> A limited liability company is dissolved, and its activities must be wound up, upon the occurrence of any of the following: . . . . On application by a member, the entry by the Superior Court of an order dissolving the limited liability company on the grounds that *the members in control of the limited liability company* have acted, are acting or will act in a manner that is illegal or fraudulent[.] (emphasis added).

Defendants argue that DBL cannot be the "member in control of the limited liability company" because the facts as alleged establish that DBL has a fifty percent membership interest

2

in the LLC and that WFLP has the remaining fifty percent membership interest—neither member of the LLC is a "member in control." WFLP responds that, as alleged, Ms. Shelton in her capacity as president of DBL has taken *de facto* control of the company and that DBL is therefore the "member in control" of the LLC.

WFLP's argument in opposition misconstrues what section 1595(1)(E) means when it references "members in control." In this context, "control" means control from a corporate governance perspective, i.e. a "controlling interest" in the company itself. By analogy, this is similar to owning a "controlling" shareholder interest in a business corporation. *See Kaplan v. First Hartford Corp.*, 484 F. Supp. 2d 131, 133 (D. Me. 2007). The fact that some LLCs can be member-managed does not mean that a manager-member is a "member in control" of an LLC because that member-manager can always be ejected if other members controlling a majority membership interest of the LLC so choose. *See* 31 M.R.S. § 1556(2). Again, by analogy, WFLP's argument is similar to positing that a President or the Chairman of the Board of a corporation is an "owner in control" of a business corporation so long as he also happens to own shares of the company. Put another way, Ms. Shelton may indeed be something akin to the *de facto* "general manager" of the Bar Harbor Hampton Inn, but this does not make her, or her company DBL, a "member in control" of W.S. Atlantic, LLC.

Elsewhere in Maine's Limited Liability Company Act, the statutes explicitly differentiate between "managers" and "members," given the importance of differentiating those roles where a member can also be a manager. *See, e.g.*, 31 M.R.S. §§ 1541(4), 1591(6), 1631(1). Here, if our Legislature intended to allow a member to apply for dissolution of a LLC based on fraudulent or illegal acts by a manager, it would have said so expressly. Instead, based on the plain language of

3

the statute, section 1595(1)(E) limits the grounds for dissolution based on fraudulent or illegal acts to where those acts are undertaken by the members in control.

In sum, even assuming that Ms. Shelton, in her capacity as president of member DBL, has taken over management of the LLC and has acted fraudulently or illegally, this is not grounds for dissolution under section 1595(1)(E), because neither she nor DBL is a "member in control" of the LLC. Count II is therefore subject to dismissal under M.R. Civ. P. 12(b)(6).

Finally, it is worth noting that this is not an illogical result leaving WFLP without recourse. *See Doane v. Dep't of Health & Human Servs.*, 2017 ME 193, ¶ 13, 170 A.3d 269 (courts "reject statutory interpretations that are inimical to the public interest or that produce absurd or illogical results.") (quotation omitted). Defendants have moved for only partial dismissal; the Complaint still states a claim for dissolution pursuant to 31 M.R.S. § 1595(1)(D). WFLP can also, and has, sued Ms. Shelton for her alleged mismanagement of the LLC and the hotel that it owns and operates. (*See* Compl. ¶¶ 52-56.) Our Legislature has made a policy decision that manager misfeasance cannot be the basis of a dissolution action by a member, which is not an absurd or illogical decision.[1]

## CONCLUSION

Based on the foregoing it is hereby Ordered:

That Defendants DBL and Linda Shelton's motion to dismiss Count II of the Complaint is Granted.

---

[1] This plain language interpretation of the statute is reinforced by the legislative history. Maine's previous dissolution statute for LLCs, 31 M.R.S. § 702(1)(C) (repealed July 1, 2011) explicitly listed both the illegal or fraudulent acts of managers and the acts of "those in control" of the LLC as grounds for dissolution. *See Ahern v. Ahern*, 2008 ME 1, ¶ 20 n.4, 938 A.2d 35. This supports the conclusion that our Legislature intended to limit this grounds for dissolution based on fraudulent or illegal acts to a situation where such acts were undertaken by the controlling members of the LLC when it enacted Maine's new Limited Liability Company Act.

4

The Clerk is requested to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

Dated: 3/7/19

_M. Michaela Murphy_
**M. Michaela Murphy**
**Justice, Business and Consumer Court**

Entered on the Docket: 3-7-19
Copies sent via Mail ___ Electronically ✓

5